[Cite as *Baxter v. Baxter*, 2026-Ohio-3041.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| TRISHA BAXTER | : | |
| | : | C.A. No. 2025-CA-63 |
| Appellee | : | |
| | : | Trial Court Case No. 2021 DR 117 |
| v. | : | |
| | : | (Appeal from Common Pleas Court-|
| BRENT BAXTER | : | Domestic Relations) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on August 7, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately send a copy of the court's ruling to each party and note that action on the docket. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Mary K. Huffman*

_____
MARY K. HUFFMAN, JUDGE

TUCKER, J., and EPLEY, J., concur.

PATRICK J. CONBOY II, Attorney for Appellant
KEITH R. KEARNEY, Attorney for Appellee

HUFFMAN, J.

{¶ 1} Brent Baxter appeals from the trial court's judgment entry finding him in contempt of court for failing to pay Trisha Baxter, his former wife, half of the extracurricular and uninsured medical expenses for their minor children as well as her share of the equity in the parties' marital home. Brent also appeals the judgment entry's finding that res judicata bars reimbursement for his claimed expenses for the children. For the reasons that follow, the judgment of the trial court is affirmed.

**Facts and Procedural History**

{¶ 2} The parties were married in December of 2002, and four children were born as issue of the marriage. A final judgment and decree of divorce was issued on March 7, 2023. Under the divorce decree, Brent was to retain the marital home and, within 12 months, refinance the property to pay Trisha her equity in that real estate. Further, the parties were each to be responsible for the payment of a percentage of the minor children's uninsured medical expenses and extracurricular activities.

{¶ 3} On February 26, 2025, Trisha filed a contempt motion, arguing that Brent had failed to reimburse her for her share of the equity in the marital home. She requested that the home be sold. She further asserted that Brent had failed to pay his share of the expenses for the minor children. On March 20, 2025, Brent also filed a contempt motion, arguing that Trisha had failed to reimburse him for the children's medical expenses and extracurricular activities.

2

{¶ 4} On August 21, 2025, a hearing occurred on the parties' motions, and a decision was issued three months later. The court found Brent in contempt for failing to pay Trisha her share of the equity in the marital home, noting that it was the second time he had been found to be in contempt of court. The court sentenced Brent to 60 days in jail with the right to purge the contempt finding by paying Trisha within 14 days of the judgment entry. The court overruled Trisha's motion to sell the marital home. It further specifically found Brent in contempt for failing to pay his portion of the expenses for the children, and it ordered him to pay Trisha $854.61 within 14 days to purge the contempt. The court overruled Brent's motion for claimed expenses for the children, finding that res judicata applied.

## Assignment of Error and Analysis

{¶ 5} In his sole assignment of error, Brent argues that the trial court abused its discretion in ruling on the parties' respective contempt motions for three reasons. He asserts that the court erred in finding him in contempt for failing to pay his portion of expenses for the children and for failing to pay Trisha her share of equity in the marital home, and that the court erred in finding that res judicata bars his claim for expenses for the children.

## Standard of Review

{¶ 6} "A prima facie case of civil contempt is made when the moving party proves both the existence of a court order and the nonmoving party's noncompliance with the terms of that order." *Wolf v. Wolf*, 2010-Ohio-2762, ¶ 4 (1st Dist.). Clear and convincing evidence is the standard of proof in civil contempt proceedings. *Flowers v. Flowers*, 2011-Ohio-5972, ¶ 13 (10th Dist.). We review the trial court's decision whether to find a party in contempt under an abuse-of-discretion standard. *DeWitt v. DeWitt*, 1996 WL 125920, *2 (2d Dist. Mar. 22, 1996), citing *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11 (1981). "'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary, or

3

unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990), citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87 (1985). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.* Finally, a "domestic relations court is in a better position than this court to assess credibility." *Baronzzi v. Gamble*, 2023-Ohio-894, ¶ 38 (7th Dist.).

### 1. Expenses for the Children

{¶ 7} Brent argues that the "issue in this matter is whether [he] received notice of the expenses with an opportunity to respond" and that, "[w]ithout further evidence or proof," the Court determined that Trisha adequately established expenses. He notes that he was also ordered to pay attorney fees as a result of the contempt finding. Brent asserts that no proof was presented as to when each of Trisha's exhibits was provided to him, and he asks us to remand the matter for further proceedings.

{¶ 8} At the hearing on the parties' motions, Trisha presented evidence of medical expenses for the children totaling $1,709.20, and the court determined that Brent's share of the expenses was $854.60. Trisha testified that she either handed receipts for the expenses to Brent or "scanned them to him" via email, and that she attempted do so at the end of every month. Her exhibits reflecting the expenses were divided by individual months.

{¶ 9} Brent acknowledged receiving emails containing links from Trisha, but he stated, "I don't know what the links are to." He testified that he deleted them without asking Trisha about their contents. When Brent was asked if Trisha physically gave him any documentation, he responded, "She threw something in my car at one point," but "when somebody throws something in my car that I don't know if it's trash, it gets thrown away."

4

When Brent was asked if he found it unusual not to receive receipts from Trisha, he stated, "No. Because it's very infrequent and I even e-mailed you at one point when she sent me something, I said, here we go again. I'm getting four months['] worth of stuff at one time . . . [and she] asks me to give her $1500 at one time."

{¶ 10} The trial court clearly credited Trisha's testimony over Brent's, and we defer to the court's assessment of credibility. An abuse of discretion is not demonstrated. In light of Brent's admitted conduct in failing to view links or attachments in emails from Trisha and in throwing away documents provided by her, the record suggests deliberate evasion rather than a defense to reimbursement. *See Vaughn v. Vaughn*, 2022-Ohio-1805, ¶ 3, fn. 3 (12th Dist.) (husband's intentional refusal to retrieve certified mail established his pattern of non-cooperation, which the domestic relations court properly characterized and the record supported). Brent's remark "here we go again" in his testimony about receiving receipts from Trisha further supports a conclusion that he was aware that Trisha was sending him receipts for reimbursement and that he chose to disregard them. In the absence of an abuse of discretion, this portion of Brent's assigned error is overruled.

2. Equity in the Marital Home

{¶ 11} Brent argues that he obtained a personal loan from his parents to pay off the mortgage on the home. He claims that the "issue is determining the total amount owed to [Trisha] after all the debts" were paid. Brent asserts that he "does not know the total amount owed and once it is figured out, he will pay the equity" due Trisha. According to Brent, "this is not a contempt matter but an issue that needs to be clarified through the Court so [he] knows exactly what needs to be paid after all of the expenses that were paid out are considered."

5

**{¶ 12}** The real estate section of the parties' final decree of divorce states that the home was appraised at $255,000 and that Brent paid a total of $4,795.74 on the mortgage after Trisha vacated the premises, for which he was entitled to credit. Brent was required to refinance the property within 12 months of the filing of the final decree (March 7, 2023). Upon refinancing, Trisha's share of the marital equity was to be reduced by her portion of the marital debt, an amount identified in the final decree to be $11,416.15.

**{¶ 13}** Trisha acknowledged a release of mortgage, recorded on April 11, 2024, stating that the mortgage was satisfied. Brent identified a mortgage statement, dated March 29, 2024, reflecting a principal payment of $147,303.07 since the most recent statement and an amount due on the mortgage of zero.

**{¶ 14}** Based on the foregoing, the record reflects a prima facie case of contempt. The mortgage was satisfied, but Trisha did not receive her share of the equity as required by the final decree. Brent's argument that he could not ascertain the amount due lacks merit given the explicit terms in the real estate section of the final decree. It suggests that he simply refused to pay Trisha her share of the equity. Trisha's equity is easily calculated by subtracting the outstanding mortgage balance paid by Brent, $147,303.07, and his payments totaling $4,795.74 from the appraised value, $255,000, and then awarding her half of that value, less her share of the marital debt, as set forth in the decree. *See Knapp v. Knapp*, 2005-Ohio-7105, ¶ 29-32 (4th Dist.) (Court's calculation of wife's real estate equity included, in part, deducting the mortgage payoff and half of husband's house payments before wife vacated the home from the value of the marital home and awarding wife one-half of that amount, less her share of marital debt.). An abuse of discretion is not demonstrated, and this portion of Brent's assigned error is overruled.

6

### 3. Res Judicata

**{¶ 15}** Brent acknowledges that the "last court decision was April 23, 2024." He argues, however, that the evidence of expenses he presented in his Exhibit D was not previously presented to the Court, and that the expenses accordingly did not arise out of the same transactions or occurrences previously litigated. According to Brent, he was "not permitted to present the evidence . . . at any previous hearing."

**{¶ 16}** "The doctrine of res judicata encompasses two separate but related concepts: claim preclusion, also known as 'estoppel by judgment,' and issue preclusion, also known as 'collateral estoppel.'" *Newman v. University of Dayton*, 2021-Ohio-1609, ¶ 23 (2d Dist.), citing *Dorsey v. Dorsey*, 2017-Ohio-5826, ¶ 100 (2d Dist.), quoting *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381 (1995). Relevant here, "[t]hrough the concept of claim preclusion, '"a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action."'" *Id.*, quoting *Dibert v. Carpenter*, 2018-Ohio-1054, ¶ 68 (2d Dist.), quoting *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395 (1998). "To determine whether claim preclusion applies, a court should consider four factors: (1) whether there is a prior valid judgment on the merits; (2) whether the latter action involves the same parties, or their privies, as the prior action; (3) whether the latter action raises claims that were or could have been litigated in the prior action; and (4) whether both actions arose out of the same transaction or occurrence." *Id.*, citing *Wright v. Heller*, 2018-Ohio-149, ¶ 22 (1st Dist.).

**{¶ 17}** The following exchange occurred in Brent's direct testimony at the hearing on the parties' motions:

> Q. Okay. What is Exhibit D?

A. It is a summary spreadsheet of expenses dating back to it looks like the latest one was 2022.

[Counsel for Trisha]: . . . I'm going to object to any talking [about] D. Nothing in here is after . . . our March [sic] of '24 decision.

. . .

[Counsel for Trisha]: These are all '23 and '22.

THE COURT: Yeah. So it's sustained.

. . .

THE WITNESS: During the hearing that it was brought up and . . . I was told that we didn't have time to go through it.

. . .

THE WITNESS: Because it was too much money.

THE COURT: I'm just - - you can appeal my decision. It will be in there that D wasn't in there and I will issue a written decision and you can appeal that.

{¶ 18} In applying res judicata, the court noted that Exhibit D contained a list of expenses for the minor children from 2022 through December 29, 2023, and that they predated the court's last decision, dated April 23, 2024. The court concluded, "As these expenses could have been litigated in the parties' previous post-decree motions, the Court finds that issues related to these expenses are barred by res judicata."

{¶ 19} Brent offers no evidence that he was denied the opportunity to litigate the expenses claimed in the exhibit. At issue in the prior hearing preceding the trial court's 2024 judgment was Trisha's motion for contempt, request for attorney fees, and motion for reimbursement of medical expenses, filed on July 21, 2023, as well as Brent's motion for

8

modification of child support filed on October 9, 2023. On April 22, 2024, Brent was found in contempt for his failure to pay for uncovered medical expenses as previously ordered.

{¶ 20} *O'Connor v. O'Connor*, 2008-Ohio-2276 (10th Dist.), is instructive. In *O'Connor*, a final decree of divorce, incorporating a shared parenting plan, was issued on June 8, 1998. *Id.* at ¶ 6. A post-decree contempt motion filed by appellant on February 12, 2003, regarding school and activity expenses, was determined by an agreed entry and a magistrate's decision. *Id.* at ¶ 25.

{¶ 21} On January 16, 2004, appellee filed a motion to modify child support and the provision regarding the sharing of expenses, as well as a motion for contempt. *Id.* at ¶ 8. The magistrate's order "modified, realigned, and reapportioned" the parties shares to be paid for expenses, effective January 16, 2004, and found appellant in contempt. *Id.* at ¶ 9-10.

{¶ 22} On May 2, 2005, appellee filed a contempt motion for appellant's failure to comply with the orders regarding child support, the allocation of the activity and medical expenses incurred after January 16, 2004, and to obtain dental insurance. *Id.* at ¶ 11. At a November 2005 hearing, appellant offered, in Exhibit B, evidence of expenses incurred prior to February 12, 2003, "the date fixed by the court's prior judgment adjusting and settling the payments to be made and received by the parties for between themselves for relevant expenses incurred up to that date." *Id.* at ¶ 22. The trial court excluded the evidence based on res judicata "because the expenses had been incurred and could have been introduced at the prior hearing that resulted in the judgment effective in 2003." *Id.* at ¶ 23.

{¶ 23} On appeal, appellant argued that the court misapplied the doctrine of res judicata, "because the evidence, although existing, was not offered or considered in 2003." *O'Connor*, 2008-Ohio-2276, at ¶ 24 (10th Dist.). The court of appeals concluded that the trial

9

court correctly found that "'[s]chool and activity expenses were the subject of [appellant's] contempt motion filed on February 12, 2003.'" *Id.* at ¶ 25 (quoting the trial court's decision). Further, "'[a]ccording to [appellant's] own testimony, the expenses listed in Defendant's Exhibit B were incurred prior to February 12, 2003.'" *Id.* (quoting the trial court's decision). Significantly, "'[e]ven if the specific expenses in Defendant's Exhibit B were not presented at the earlier hearing, they could have been, and, therefore are barred by res judicata.'" *Id.* (quoting the trial court's decision). The court of appeals emphasized that in *Grava*, cited above, the Ohio Supreme Court "stated that the doctrine of res judicata bars not only subsequent actions involving the same legal theory of recovery as the previous action, but also claims which could have been litigated in the previous action." *Id.*

{¶ 24} Brent does not contest that the expenses in Exhibit D predate the last hearing. Although they were not presented at the hearing before the April 2024 judgment entry, they could have been, but Brent did not include them in his motion filed in that proceeding. Therefore, his arguments are barred by res judicata. In other words, Brent could have brought a contempt motion regarding unpaid expenses for the children when Trisha filed her earlier contempt motion. Such a motion might have resulted in an offset against what he owed or obviated the court's contempt determination upon a finding that Trisha owed him money based on the prior order. Accordingly, this portion of Brent's assigned error is overruled.

{¶ 25} Having overruled all the arguments under Brent's assignment of error, it is overruled in its entirety.

### Conclusion

{¶ 26} The judgment of the Greene County Common Pleas Court, Domestic Relations Division, is affirmed.

. . . . . . . . . . . . .

TUCKER, J., and EPLEY, J., concur.